1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   LLOYD M. THOMAS,                         No.  2:12-cv-2412-EFB P

11              Plaintiff,

12       v.                                   ORDER[1] AND FINDINGS AND
                                              RECOMMENDATIONS
13   G. SWARTHOUT, et al.,

14              Defendants.

15

16        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  Pending before the court are two defense motions for summary judgment.  The

18   first was filed by defendants Cheung, Hu, Quattlebaum, and Swarthout;[2] the second was filed by

19   defendants Austin, and Hickerson.  ECF Nos. 30, 69.  For the reasons that follow, it is

20   recommended that summary judgment be denied as to the damages claims brought against

21

22        [1] Defendants Cheung, Hu, Quattlebaum, and Swarthout declined the jurisdiction of a
     magistrate judge and requested reassignment to a district judge.  ECF No. 47.  Accordingly, the
     clerk will be directed to randomly assign this case to a district judge.

23

24        [2]  Although this summary judgment motion was filed before the second amended
     complaint,  see ECF No. 40 (order granting plaintiff leave to file a second amended complaint,
25   which amended some allegations and added claims against defendants Austin and Hickerson),
     defendants Cheung, Hu, Quattlebaum, and Swarthout submit their request for summary judgment
26   on the same brief and supporting documents.  ECF No. 42 at 1, n.1 (defendants Cheung, Hu,
     Quattlebaum, and Swarthout's answer to the second amended complaint, requesting resolution of
27   their previously filed motion on the grounds that the "allegations in the second amended
     complaint are virtually identical to those alleged against them in the first amended complaint
28   . . . .").

                                              1

1   defendants Cheung and Hu in their individual capacities, denied as to the claim for prospective

2   injunctive relief brought against defendant Swarthout in his official capacity, and granted in all

3   other respects.

4   **I.      The Complaint**

5          Plaintiff's proceeds on his second amended complaint (ECF No. 27), which is signed

6   under penalty of perjury and alleges as follows:  On November 10, 2011, defendant Cheung, a

7   dentist at California State Prison, Solano (CSP-Solano), removed all but six of plaintiff's teeth.

8   ECF No. 27 at 6, Ex. A at 10.  Cheung prescribed plaintiff Boost, a liquid nutritional drink,

9   through November 20, 2011.  *Id.*  Because of the major dental surgery, plaintiff was in severe

10  pain and suffered from bruised and bleeding gums.  *Id.* at 7.  He could not properly chew most of

11  the food provided to him as part of the regular prison diet, i.e., corn on the cob, Salisbury steak,

12  egg rolls, and salads.  *Id.*  In addition, plaintiff was not given enough time to properly chew his

13  food and ended up choking on several occasions.  *Id.*  Plaintiff lost weight and was hungry

14  because he had to skip so many meals.  *Id.* at 6-7.  For these reasons, plaintiff requested a soft

15  food diet and an extension of the Boost prescription.  *Id.* at 6.  Cheung told plaintiff he did not

16  have the authority to extend the Boost prescription and that plaintiff needed to request the

17  extension from his primary care physician.  *Id.*  Cheung also denied plaintiff's request for a soft

18  food diet.  *Id.* at 7.

19         Plaintiff made a similar request to the supervising dentist, defendant Hu.  *Id.* at 5, 7.  Hu

20  informed plaintiff that there was no "soft food diet" at CSP-Solano.  *Id.* at 8.  Hu also informed

21  plaintiff that he was not allowed to extend the Boost prescription and that plaintiff should request

22  an extension from his primary care physician.  *Id.* at 7-8.  Plaintiff claims that defendants'

23  statements regarding the inability of the dental department to renew his prescription for Boost

24  were false.  *Id.* at 8; *see also id.*, Ex. B (California Department of Corrections and Rehabilitation

25  (CDCR) policy allowing "treating clinicians," such as dentists, to prescribe "high caloric drinks"

26  to inmates with certain dental conditions "for up to 90 days").

27         Defendant Hickerson, Acting Chief Executive Officer of Dental Services, responded to

28  plaintiff's inmate appeal requesting an extension of Boost and a soft food diet.  *Id.* at 9, Ex. A

1    (Appeal No. SOL-HC-12036030).  Hickerson denied plaintiff's request for relief and stated that

2    "the California Department of Corrections prohibits the prescribing of outpatient therapeutic

3    diets."  *Id.*  Defendant Austin, the Chief Executive Officer of Dental Services was deliberately

4    indifferent to plaintiff's dental needs by supporting this "false" statement.  *Id.* at 9.

5            Defendant Quattlebaum, the Chief Operating Officer of Dental Services, was made aware

6    of plaintiff's dental issues through plaintiff's inmate appeal.  *Id.* at 8.  Quattlebaum created

7    policies that forbade "the most basic dental care."  *Id.*

8            Defendant Swarthout, the warden at CSP-Solano, allowed for the creation and

9    implementation of a policy that deprived plaintiff of "serious dental care."  *Id.* at 5, 8.

10           Plaintiff claims that each of the defendants was deliberately indifferent to his serious

11   medical needs in violation of the Eighth Amendment.  *See* ECF Nos. 27, 40.  He seeks damages

12   against all defendants as well as prospective injunctive relief from defendant Swarthout.  ECF

13   No. 27 at 6.

14   **II.    Legal Standards**

15           **A.  Summary Judgment Standards**

16           Summary judgment is appropriate when there is "no genuine dispute as to any material

17   fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

18   judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

19   to the determination of the issues in the case, or in which there is insufficient evidence for a jury

20   to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

21   (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

22   *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

23   motion asks whether the evidence presents a sufficient disagreement to require submission to a

24   jury.

25           The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

26   or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

27   "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

28   trial.'"  *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)  (quoting Fed. R.

1    Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary

2    judgment practice, the moving party bears the initial responsibility of presenting the basis for its

3    motion and identifying those portions of the record, together with affidavits, if any, that it

4    believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323;

5    *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets

6    its burden with a properly supported motion, the burden then shifts to the opposing party to

7    present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson,*

8    477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

9         A clear focus on where the burden of proof lies as to the factual issue in question is crucial

10   to summary judgment procedures.  Depending on which party bears that burden, the party seeking

11   summary judgment does not necessarily need to submit any evidence of its own.  When the

12   opposing party would have the burden of proof on a dispositive issue at trial, the moving party

13   need not produce evidence which negates the opponent's claim.  *See, e.g., Lujan v. National*

14   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

15   which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

16   24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

17   summary judgment motion may properly be made in reliance solely on the 'pleadings,

18   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

19   should be entered, after adequate time for discovery and upon motion, against a party who fails to

20   make a showing sufficient to establish the existence of an element essential to that party's case,

21   and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

22   circumstance, summary judgment must be granted, "so long as whatever is before the district

23   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

24   satisfied."  *Id.* at 323.

25         To defeat summary judgment the opposing party must establish a genuine dispute as to a

26   material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that

27   is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at

28   248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

1    will properly preclude the entry of summary judgment."). Whether a factual dispute is material is

2    determined by the substantive law applicable for the claim in question. *Id.* If the opposing party

3    is unable to produce evidence sufficient to establish a required element of its claim that party fails

4    in opposing summary judgment. "[A] complete failure of proof concerning an essential element

5    of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S.

6    at 322.

7        Second, the dispute must be genuine. In determining whether a factual dispute is genuine

8    the court must again focus on which party bears the burden of proof on the factual issue in

9    question. Where the party opposing summary judgment would bear the burden of proof at trial on

10   the factual issue in dispute, that party must produce evidence sufficient to support its factual

11   claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

12   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit

13   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

14   for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to

15   demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

16   that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*,

17   477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

18       The court does not determine witness credibility. It believes the opposing party's

19   evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255;

20   *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the

21   proponent must adduce evidence of a factual predicate from which to draw inferences. *American*

22   *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,

23   dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at

24   issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

25   Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is

26   some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could

27   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

28   /////

5

1  trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant

2  summary judgment.

3          Concurrent with their motions for summary judgment, defendants advised plaintiff of the

4  requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

5  ECF Nos. 30-7, 69; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154

6  F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v.*

7  *Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

8          **B.  Eighth Amendment Standards**

9          To succeed on an Eighth Amendment claim predicated on the denial of medical care, a

10  plaintiff must establish that he had a serious medical need and that the defendant's response to

11  that need was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see*

12  *also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical need exists if the failure to

13  treat the condition could result in further significant injury or the unnecessary and wanton

14  infliction of pain.  *Jett*, 439 F.3d at 1096.  Deliberate indifference may be shown by the denial,

15  delay, or intentional interference with medical treatment, or by the way in which medical care is

16  provided.  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

17          To act with deliberate indifference, a prison official must both be aware of facts from

18  which the inference could be drawn that a substantial risk of serious harm exists, and he must also

19  draw the inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Thus, a defendant is liable if

20  he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing

21  to take reasonable measures to abate it."  *Id.* at 847.  A physician need not fail to treat an inmate

22  altogether in order to violate that inmate's Eighth Amendment rights.  *Ortiz v. City of Imperial*,

23  884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition,

24  even if some treatment is prescribed, may constitute deliberate indifference in a particular case.

25  *Id.*

26          It is important to differentiate common law negligence claims of malpractice from claims

27  predicated on violations of the Eighth Amendment's prohibition of cruel and unusual punishment.

28  /////

1  In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not

2  support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.

3  1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th

4  Cir. 2004). Plaintiff must show a deliberate disregard for a known medical need. The Ninth

5  Circuit has made clear that a difference of medical opinion is, as a matter of law, insufficient to

6  establish deliberate indifference. *See Toguchi*, 391 F.3d at 1058. "Rather, to prevail on a claim

7  involving choices between alternative courses of treatment, a prisoner must show that the chosen

8  course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in

9  conscious disregard of an excessive risk to [the prisoner's] health.'" *Id.* (quoting *Jackson v.*

10  *McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

11  **III.    Discussion**

12      Plaintiff alleges that defendants Cheung, Hu, Austin, and Hickerson were deliberately

13  indifferent to his dental needs by denying plaintiff's requests for additional Boost (a liquid

14  nutritional supplement) and a soft food diet while he waited to receive dentures after having

15  eighteen teeth extracted in November 2011. Plaintiff further alleges that defendants Quattlebaum

16  and Swarthout were deliberately indifferent to his dental needs by creating policies that deprived

17  him of a soft food diet following dental surgery. Before proceeding to the merits of defendants'

18  summary judgment motions, the court addresses several defense objections to the evidence

19  submitted by plaintiff in opposition to summary judgment.[3]

20      Defendants Cheung, Hu, Quattlebaum, and Swarthout's objections to certain portions of

21  the declaration plaintiff filed in opposition to their motion are moot, as none of the portions to

22  which they object is material to the resolution their motion. *See* ECF No. 38-1.

23      Defendants Austin and Hickerson's objections to plaintiff's exhibits, which consist of

24  defendants' discovery responses, plaintiff's health records, and plaintiff's inmate appeals (many

25

26  _____

27      [3] The court afforded plaintiff two opportunities to submit revised oppositions to defendants' summary judgment motions after granting his requests for additional discovery. *See* ECF Nos. 55, 71. Because plaintiff did not file any revised oppositions, the court considers plaintiff's initial oppositions in resolving defendants' motions. *See* ECF Nos. 34, 35, 70.

28

of which were also submitted as evidence by defendants themselves), are overruled.[4]  *See* ECF No. 81-1.  Their objections, which are based on hearsay and failure to authenticate/lay a foundation, fail to take into consideration that on summary judgment, the non-moving party's evidence need not be in a form that is admissible at trial.  *See Burch v. Regents of University of California*, 433 F. Supp. 2d 1110, 1122 (E.D. Cal. 2006) (citing *Celotex*, 477 U.S. at 324, and reasoning that at trial, when a party raises valid evidentiary objection, the opposing party will have an opportunity to present the evidence in an alternative and admissible form, which is not the case in the context of summary judgment).

### A.  Official Capacity Claims for Damages

Plaintiff sues defendants in their individual and official capacities.  ECF No. 27 at 6. Defendants Cheung, Hu, Quattlebaum, and Swarthout move for summary judgment on plaintiff's official capacity claims for damages, arguing that they are immune from suit under the Eleventh Amendment.[5]  ECF No. 30-1 at 8-9.

The Supreme Court has recognized that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Absent a waiver by the state or a valid congressional override, the Eleventh Amendment offers state agencies immunity from private causes of action for damages brought in federal court.  *Dittman v. California,* 191 F.3d 1020, 1025-26 (9th Cir. 1999).  The State of California has not waived its immunity under the Eleventh Amendment for § 1983 claims.  *Id.*  In addition, the Supreme Court has held that Congress did not intend for § 1983 to abrogate a state's Eleventh Amendment immunity.  *See id* (citing *Kentucky v. Graham*, 473 U.S. 159, 169 n.17

---

[4] The practice of filing objections to every stitch of paper that the opposing party submits in opposition to a motion for summary judgment simply burdens the process and does not assist the court in considering the issues that are a proper focus for summary judgment.

[5] Curiously, defendants Cheung, Hu, Quattlebaum, and Swarthout also addresses in their current motion the previously dismissed claim that they were deliberately indifferent to plaintiff's dental needs in February and March of 2013.  *See* ECF No. 30-1 at 10.  The court need not address that portion of defendants' motion because plaintiff did not include that claim in his second amended complaint.  *See* ECF No. 27.

1   (1985)).  Accordingly, defendants Cheung, Hu, Quattlebaum, and Swarthout are entitled to

2   summary judgment in their favor with respect to plaintiff's official capacity claims for damages.

3   *See also Hafer v. Melo*, 502 U.S. 21, 30 (1991) (clarifying that Eleventh Amendment does not bar

4   suits against state officials sued in their individual capacities, nor does it bar suits for prospective

5   injunctive relief against state officials sued in their official capacities).

6         **B.  Defendants Cheung and Hu**

7         Defendant Cheung moves for summary judgment on the grounds that plaintiff did not

8   have a dental need for Boost or a soft food diet beyond the initial ten-day prescription of Boost he

9   received following the extraction of eighteen teeth.  *See* ECF No. 30-4 ("Rosenberg Decl.") ¶ 8

10   (explaining that plaintiff was left with only six bottom teeth and no top teeth following the

11   November 10, 2011 dental surgery).  According to defendants' dental expert, prison dentists can

12   prescribe Boost to an inmate who needs it, and an inmate will need it if the "surgical wounds have

13   not yet healed" or if "he cannot chew the food that is part of the regular prison diet."  *Id.*

14   Bleeding, inflamed, red, and raw gums are signs that an inmate likely has difficulty chewing his

15   food and has a dental need for Boost.  *Id.*

16         Defendants' dental expert opines that plaintiff's health records do not suggest that plaintiff

17   had a dental need for Boost or a soft food diet beyond the initial ten-day prescription.  *Id.* ¶¶ 13,

18   14, 21.  In addition, defendants argue that plaintiff's weight at various times following the tooth

19   extractions demonstrates that he was able to chew his food and was getting enough to eat.  ECF

20   No. 30-1 at 10; *see also* Rosenberg Decl. ¶ 19.  According to defendants, plaintiff did not ask for

21   Boost until January 11, 2012, and by that time, "his post-surgery symptoms had already been

22   resolved."  ECF No. 30-1 at 10.  They contend that Cheung correctly advised plaintiff to talk to

23   his physician if he wanted Boost, since he had no dental need for it.  *Id.*

24         Plaintiff counters with evidence showing that he requested renewal of his Boost

25   prescription as early as November 19, 2011, and that he continued to request Boost and/or a soft

26   food diet at each of his follow up appointments with Cheung.   ECF No. 34 at 18-24 ("Pl.'s

27   Decl."), ¶¶ 19-20, 23; ECF No. 35-1, Exs. H, S; *see also* Rosenberg Decl. ¶¶ 13, 17, Exs. 7-9, 12,

28   15-16 & ECF No. 30-5 ("Quattlebaum Decl."), Ex. 1 (documenting plaintiff's appointments with

1  Cheung on the following dates: November 14, 15, and 16, 2011; December 1, 8, and 16, 2011;

2  and January 11 and 18, 2012).  Plaintiff also submits a sworn declaration explaining that in the

3  months following his dental surgery, chewing was so painful that he would go hungry or choke

4  on poorly chewed food.  Pl.'s Decl. ¶¶ 20, 24; *see also* ECF No. 27 at 7 (including plaintiff's

5  sworn allegations that he was unable to eat nearly all of the food offered to him as part of the

6  regular prison diet).  Plaintiff documented his symptoms in a "Dental Pain Profile" that he

7  completed on December 8, 2011.  *See* ECF No. 35-1, Ex. Q at 85 (describing "very bad" pain as

8  "tender," "throbbing" and "sore," as a "7-8" on a scale of one to ten, and worsened by "eating

9  [and] touching"); *see also id.*, Ex. Q at 83 (plaintiff's December 4, 2011 health care request form

10  seeking Advil).  Other dental records confirm that throughout December, plaintiff complained of

11  "soreness" in his mouth, which Cheung attributed to an "ulcerated lesion" caused by trauma and

12  chewing.[6]  *Id.*, Ex. Q at 81, 84, Ex. R at 87, Ex. S.  Plaintiff also complained in an inmate appeal

13  dated January 1, 2012, that he had been seen by the dental department on two occasions following

14  his November 10, 2011 dental surgery for his complaints of "severe bruising, bleeding, and

15  excruciating pain to [his] gums."  ECF No. 35-1, Ex. H.  Plaintiff complained that although his

16  symptoms persisted, his requests for Boost and a soft food diet had been denied.  *Id.*  Finally,

17  plaintiff explains that his various weights (as documented in the medical records submitted by

18  defendants), cannot be trusted and are inaccurate because plaintiff was not actually weighed on

19  those dates.  Pl.'s Decl. ¶ 29.  Instead, he claims, the recorded weights were based upon plaintiff's

20  own estimates.  *Id.*  While defendants undoubtedly dispute much of plaintiff's declaration

21  testimony, his credibility as to what he requested, how often it was request, and from whom, as

22  well as his statements describing his symptoms and difficulty with solid food, simply cannot be

23  resolved on summary judgment.  It is for a jury to hear the conflicting testimony and resolve

24  credibility.

25  /////

26

27  _____
   [6] Without explanation, defendants' dental expert opines that this ulcerated lesion – which
   was caused by chewing – "would not have prevented [plaintiff] from chewing his food."  *See*
28  Rosenberg Decl. ¶ 13.

10

1    The undisputed evidence shows that plaintiff had major dental surgery – specifically, the

2    extraction of *eighteen* teeth – and that no dietary accommodations were made for him beyond the

3    initial ten-day prescription of Boost.  Plaintiff's evidence supports a finding that in the months

4    following the surgery, he could not easily or safely chew the food made available to him as part

5    of the regular prison diet.  Thus, a fair-minded jury could find that plaintiff had a dental need for

6    Boost or a soft food diet beyond the initial ten day prescription of Boost.  Defendants argue in

7    their reply that plaintiff's opposition "is based on his personal, improper lay opinion, which is

8    insufficient to rebut Defendants' expert testimony."  ECF No. 38 at 4-5.  Whether or not plaintiff

9    could properly chew his food, however, does not require expert testimony.  If the jury believes

10   plaintiff's evidence, Cheung will have to convince the jury that he was not deliberately indifferent

11   by failing to accommodate plaintiff's dietary needs after a surgery that left plaintiff with only six

12   teeth.  The court does not determine witness credibility on summary judgment; rather, it must take

13   as true the non-moving party's evidence and draw inferences most favorably for that party.

14   *Anderson*, 477 U.S. at 249, 255; *Matsushita*, 475 U.S. at 587.

15   Plaintiff also alleges that as Cheung's supervisor, Hu was aware of plaintiff's dental needs

16   sometime prior to February 2012 and ultimately denied plaintiff's request for additional Boost

17   and a soft food diet by misrepresenting the prison's policies applicable to such requests.  ECF No.

18   27 at 7-8.  Defendants argue that Hu "had no reason to step in and provide Plaintiff with Boost or

19   a soft food diet . . . because Plaintiff's dental needs were being satisfied" and he "did not have a

20   dental need for Boost or a special soft food diet."  ECF No. 30-1 at 11.  Hu's argument turns on a

21   disputed issue for trial, namely, whether or not plaintiff had a dental need for additional Boost or

22   a soft food diet.  Thus, the court cannot grant his request for summary judgment.

23   Cheung and Hu also contend they are entitled to qualified immunity.  Qualified immunity

24   protects government officials from liability for civil damages where a reasonable person would

25   not have known that their conduct violated a clearly established right.  *Anderson v. Creighton*,

26   483 U.S. 635, 638-39 (1987).  "In resolving questions of qualified immunity at summary

27   judgment, courts engage in a two-pronged inquiry."  *Tolan v. Cotton*, ___ U.S. ___, ___, 134 S.

28   Ct. 1861, 1865 (2014) (per curiam).  "The first asks whether the facts, 'taken in the light most

1   favorable to the party asserting the injury, . . . show the officer's conduct violated a federal

2   right.'" *Id.* (internal bracketing omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

3   "The second prong of the qualified-immunity analysis asks whether the right in question was

4   'clearly established' at the time of the violation." *Tolan*, 134 S. Ct. at 1866 (quoting *Hope v.*

5   *Pelzer*, 536 U.S. 730, 739 (2002)).

6          Applying the first prong, Cheung and Hu contend that there was no violation of a

7   constitutional right and that they are entitled to qualified immunity because "the undisputed facts

8   show that [they] were not deliberately indifferent to Plaintiff's medical needs by failing to renew

9   Plaintiff's Boost prescription or prescribing a soft food diet when he did not have a dental

10  necessity for either." ECF No. 30-1 at 15. As discussed above, there are genuine disputes over

11  material facts as to whether plaintiff had a dental need for additional Boost or a soft food diet. If

12  there was no such need, and therefore, no constitutional violation, then of course there was no

13  violation of a clearly established constitutional right. But the material factual disputes which

14  preclude summary judgment on that question also preclude summary judgment on the assertion of

15  qualified immunity here. *See LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9th Cir. 2000)

16  ("The determination of whether a reasonable officer could have believed his conduct was lawful

17  is a determination of law that can be decided on summary judgment only if the material facts are

18  undisputed.").

19         **C. Defendants Austin and Hickerson**[7]

20         Plaintiff's Eighth Amendment deliberate indifference claim against defendants Austin and

21  Hickerson is based upon statements made in the second level response to plaintiff's

22  administrative appeal requesting additional Boost and/or a soft food diet. ECF No. 27 at 9, Ex. A

23  (Appeal No. SOL-HC-12036030). However, the record shows that neither Hickerson nor Austin

24  is a medical doctor or dentist. ECF No. 69-3 ("Austin Decl.") ¶ 4; ECF No. 69-4 ("Hickerson

25         [7] After defendants Austin and Hickerson filed their reply and objections to plaintiff's
26  evidence, plaintiff filed a response (and a request for an extension of time to file the response).
    ECF Nos. 84, 85. Defendants move to strike that filing as an unauthorized surreply. They add
27  that the surreply only serves to reiterate arguments made in plaintiff's opposition. ECF No. 86.
    The motion to strike is denied. Plaintiff's filing responds, at least in part, to defendants' sweeping
28  objections to plaintiff's evidence.

1   Decl.") ¶ 4.  Austin and Hickerson were, respectively, the Chief Executive Officer (CEO) and

2   Acting CEO of Health Care Services at CSP-Solano.  Austin Decl. ¶ 1; Hickerson Decl. ¶ 3.  On

3   March 23, 2012, Hickerson denied plaintiff's appeal at the second level of review.  Hickerson

4   Decl. ¶ 7, Ex. A at 8-10; Austin Decl. ¶ 9.  Austin did not personally review, or respond to the

5   appeal because she was off duty.[8]  Austin Decl. ¶ 10; Hickerson Decl. ¶ 7.

6          Hickerson's response to plaintiff's appeal noted plaintiff's dissatisfaction with the first

7   level response, and explained that as part of the second level review, plaintiff's dental history and

8   appeal were reviewed by Hu (the supervising dentist) and a health program manager.  Hickerson

9   Decl., Ex. A at 8-9.  Hickerson deferred to Hu's opinion that the dental department could only

10  provide nutritional supplements through the "dental post operative period," and that plaintiff

11  needed to request such a supplement from his primary care provider.  *Id.*, Ex. A at 9.  Hickerson's

12  response also informed plaintiff of various CDCR policies regarding post-surgical nutritional

13  supplements and therapeutic diets (i.e., renal diets, hepatic diets, and gluten-free diets).[9]  *Id.*, Ex.

14  A at 8-9.  Hickerson now admits that he incorrectly informed plaintiff that "CDCR prohibits the

15  prescribing of outpatient therapeutic diets."  *See id.*, ¶¶ 11-12 (clarifying that only "modified food

16  consistency" in outpatient therapeutic diets is prohibited).

17         In his opposition, plaintiff argues that because of their supervisory positions, Austin and

18  Hickerson were necessarily "involved in [his] dental treatment."  ECF No. 70 at 3-4, 8-10.  He

19  also complains that they failed to ensure that CDCR and CSP-Solano policies regarding dental

20  needs were properly followed.  *Id.* at 5.  However, in reviewing and responding to plaintiff's

21  appeals, Austin and Hickerson's responsibility was to confirm that the proper steps were followed

22  for the appeal process.  Hickerson Decl. ¶ 6.  They were not responsible for reviewing the clinical

23  findings contained in the appeals, or second-guessing determinations made by a physician or

24  dentist.  *Id.*  Although Hickerson's response misstated CDCR policy, there is no evidence that the

---

26  [8] Austin did, however, provide a first level response to another appeal plaintiff filed
    regarding his request for additional Boost and a soft food diet.  *See* ECF No. 70 at 11, 86-87.

27  [9] "Therapeutic diets" as defined by these policies, does not include special diets for
28  inmates with dental needs.  *See* Hickerson Decl. ¶12; Rosenberg Decl., Ex. 31.

1    misstatement was intentional or exposed plaintiff to a serious risk of substantial harm.  In short,

2    Hickerson misstated the policy but there is no evidence that he was deliberately indifferent to

3    plaintiff's known medical condition or that he deliberately precluded plaintiff from obtaining

4    needed treatment.

5          Plaintiff has not shown that either Austin or Hickerson acted beyond their administrative

6    capacities and actually participated in plaintiff's medical or dental treatment.  It undisputed that

7    their involvement was limited to their review of plaintiff's administrative appeals.  There are no

8    constitutional requirements regarding how a grievance system is operated.  *Ramirez v. Galaza*,

9    334 F.3d 850, 860 (9th Cir. 2003).  On this record, a jury could not reasonably conclude that

10   defendants' conduct amounted to deliberate indifference to a serious medical need.  *See Peralta v.*

11   *Dillard*, 744 F.3d 1076, 1086-87 (9th Cir. 2014) (en banc) (prison medical officer without

12   expertise in specific field who denies inmate appeal for medical care after it was reviewed by two

13   qualified medical officials does not demonstrate wanton infliction of unnecessary pain).

14   Therefore, there is no triable issue of fact as to plaintiff's deliberate indifference claim against

15   Hickerson and Austin and they are entitled to summary judgment.

16        **D.  Defendant Quattlebaum**

17        Plaintiff alleges that defendant Quattlebaum was deliberately indifferent to plaintiff's

18   dental needs by creating policies that deprived him of a soft food diet following dental surgery.

19   ECF No. 27 at 8-9.  He also alleges that as a "health care appeal coordinator," Quattlebaum was

20   responsible for ensuring that plaintiff receive adequate dental services.  *Id.* at 8.

21        Defendants contend that Quattlebaum, a staff dentist for CDCR Dental Headquarters in

22   Sacramento, could not have been deliberately indifferent as alleged because Quattlebaum has

23   never had the authority to create medical or dental policies for CDCR or CSP-Solano.  ECF No.

24   30-5 ("Quattlebaum Decl.") ¶ 5.  Plaintiff describes this statement as "unbelievable," but by his

25   own admission, he has no evidence to the contrary.  ECF No. 35 at 17.

26        It is undisputed that Quattlebaum's only involvement with plaintiff consisted of his May

27   2012 review of plaintiff's January 2012 appeal.  Quattlebaum Decl., ¶¶ 6, 7, 11, Ex. 2.  As part of

28   that review, Quattlebaum provided his professional opinion to the third level reviewers that

14

1    plaintiff did not have a dental need for Boost or a soft food diet and that he had received adequate

2    dental care at CSP-Solano.  *Id.* at ¶¶ 6, 11, Ex. 2.  By the time Quattlebaum rendered his opinion,

3    plaintiff had already received his dentures.  *See* Rosenberg Decl. ¶ 11 (noting that plaintiff

4    received his dentures in April 2012).  Thus, Quattlebaum could not have disregarded or impeded

5    treatment for plaintiff's earlier dental needs following his November 2011 dental surgery or

6    otherwise subjected plaintiff to a substantial risk of serious harm.

7         In light of these undisputed facts, a reasonable jury could not find that Quattlebaum was

8    deliberately indifferent to plaintiff's serious dental needs and Quattlebaum is entitled to summary

9    judgment.

10        **E.  Defendant Swarthout**

11        Plaintiff claims that defendant Swarthout, the warden at CSP-Solano, allowed for the

12    creation and implementation of a policy that deprived plaintiff of a post-surgical soft food diet,

13    and that his acceptance and approval of the policy, as indicated by his signature on the policy,

14    constitutes deliberate indifference.  ECF No. 27 at 5, 8.  As part of his request for relief in this

15    action, plaintiff asks that Swarthout be ordered "to implement 'soft-food' diets at CSP-Solano."

16    *Id.* at 6.

17        Defendants first argue that Swarthout is entitled to summary judgment because he did not

18    personally participate in providing plaintiff with medical or dental treatment.  ECF No. 30-1 at

19    14.  Indeed, an individual defendant is not liable on a civil rights claim unless the facts establish

20    the defendant's personal involvement in the constitutional deprivation or a causal connection

21    between the defendant's wrongful conduct and the alleged constitutional deprivation.  *See Hansen*

22    *v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir.

23    1978).  Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

24    their employees under a theory of respondeat superior and, therefore, when a named defendant

25    holds a supervisorial position, the causal link between that defendant and the claimed

26    constitutional violation must be specifically shown.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th

27    Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941

28    (1979).

1    Here, plaintiff admittedly attempts to impose liability on Swarthout simply because of his

2    role as a supervisor.  *See* ECF No. 34 at 1-2, 9.  Therefore, summary judgment is appropriate with

3    respect to plaintiff's claim for monetary damages against Swarthout in his individual capacity.

4    Plaintiff also seeks prospective injunctive relief against Swarthout in his official capacity.

5    For claims seeking injunctive relief in which a state policy is attacked on federal grounds, it is not

6    necessary to allege the personal involvement of a state official if the policy relates in some way to

7    the job duties of the named defendant.  *Ryles v. Felker*, No. CIV S-08-0074 LKK GGH P, 2008

8    U.S. Dist. LEXIS 107591, at *8 (E.D. Cal. Apr. 28, 2008).  "All that is required is that the

9    complaint name an official who could appropriately respond to a court order on injunctive relief

10   should one ever be issued."  *Id.*

11   Nonetheless, defendants argue that plaintiff is not entitled to his requested injunctive relief

12   because (1) "CSP-Solano does not have, and has never had, a policy that deprives inmates from

13   having a soft food diet after dental surgery," (2) Swarthout "does not have the authority to create,

14   or the requisite expertise to suggest, such a policy," and (3) "there is no need for a policy that

15   specifically provides for a special soft food diet . . . [because] the standard heart healthy diet . . .

16   [has] adequately accounted for post-surgical inmates and those awaiting dentures."  ECF No. 30-1

17   at 14; *see also* Rosenberg Decl. ¶ 20; Quattlebaum Decl. ¶ 9.  As discussed below, the evidence

18   before the court demonstrates the existence of genuine disputes as to each of these issues.

19   Volume 8, Chapter 5.12 of the Supplemental Nutritional Support of the Division of

20   Correctional Health Care Services policies ("Chapter 5.12") sets out CDCR's policy for

21   supplemental nutritional support.  Rosenberg Decl. ¶ 4.  Volume 4, Chapters 20A and 20B

22   provide additional direction to CDCR dentists to follow when considering whether to prescribe an

23   inmate a nutritional supplement.  *Id.*  According to Chapter 5.12, a "mechanically altered" diet

24   (otherwise known as a soft-food diet) is only available for patient-inmates housed in a medical

25   setting who have already been prescribed a "therapeutic diet," (i.e., a renal diet, a gluten free diet,

26   or a hepatic diet).  *Id.*, Ex. 30 at 110.  Moreover, inmates with dental conditions can only be

27   prescribed a liquid nutritional supplement, such as Boost; they cannot be prescribed

28   nourishments, such as soft food items, in addition to the standard prison meal.  *See id.*, Ex. 30 at

110-11, Ex. 31 at 15.  It appears that these policies would have prevented plaintiff's treating clinicians from prescribing him either a soft food diet or soft food items in addition to his standard prison diet.  Thus, there is a triable issue as to whether the policies of CDCR and/or CSP-Solano deprived plaintiff of a soft food diet following his dental surgery.

Swarthout also admits that he has the authority to "designate[ ] an associate warden to take his place as a member of the governing bodies that [ ] implement medical and dental policies."  ECF No. 35 at 94 (Swarthout's Response to Interrogatory No. 5).  Thus, there is some evidence that Swarthout could provide plaintiff with the requested injunctive relief.  *See Rouser v. White*, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (proper defendant for injunctive relief regarding implementation of a CDCR policy would be the Secretary of the CDCR in his official capacity or, to the extent that the policy is institution-specific, the warden in his official capacity).

In addition, plaintiff has produced evidence undermining defendants' contention that the standard prison diet was soft enough for him to eat in the months following his dental surgery.  *See, e.g.,* ECF No. 35-1 at 4 (plaintiff's January 1, 2012 inmate appeal complaining that chewing the "regular food" causes "severe bruising, bleeding, and excruciating pain to [his] gums" and that aside from peanut butter and jelly sandwiches offered two days a week, he "had to skip all other lunches," is "hungry cause [he] can't eat what everyone else eats and hurt[s] badly when [he] tr[ies]," and is "constantly choking on poorly chewed food.").  Plainly, there is a disputed issue of a material fact as to whether the standard prison diet adequately accounted for plaintiff's dental needs.

For these reasons defendants' motion must be denied as to plaintiff's claim for injunctive relief against defendant Swarthout in his official capacity.

**IV.    Order and Recommendation**

Accordingly, IT IS HEREBY ORDERED that: (1) plaintiff's request for an extension of time to file a response to defendant Austin and Hickerson's reply and objections (ECF No. 84) is granted, *nunc pro tunc*; (2) defendant Austin and Hickerson's motion to strike (ECF No. 86) is denied; and (3) the Clerk of the Court shall randomly assign a United States District Judge to this action.

17

For the reasons stated above, it is hereby RECOMMENDED that summary judgment (ECF Nos. 30, 69) be denied as to the damages claims brought against defendants Cheung and Hu in their individual capacities, denied as to the claim for prospective injunctive relief brought against defendant Swarthout in his official capacity, and granted in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these amended findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:   April 5, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE